## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MICHAEL SHANE SHUSTER,**

**Petitioner,**

v.

**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

**Respondent.**

**Case No. 2:18-cv-211**
**Judge Michael H. Watson**
**Magistrate Judge Kimberly A. Jolson**

## ORDER AND REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be **DISMISSED**. In addition, Petitioner's request for discovery and for an evidentiary hearing are **DENIED**.

## I.    FACTS AND PROCEDURAL HISTORY

This case has a lengthy procedural history summarized below as follows:

{¶ 4} This case arose on March 5, 2012, when a high school student overheard the victim tell a friend she was being molested by her stepfather. The student told his parents, who called the school guidance counselor immediately. The guidance counselor brought the victim into her office and asked whether the allegation was true. The victim broke down crying uncontrollably and said yes, it was true, but she didn't want her mom to know and she didn't want to tell because the family would lose everything. The guidance counselor obtained more details from the victim and contacted Children's Services and the Morgan County Sheriff's Department.

{¶ 5} The victim was interviewed by law enforcement and a forensic interviewer at Nationwide Children's Hospital. The victim stated the sexual abuse began in 2006 when the family moved into a new home they built on South Street in Stockport, Ohio when she was 10 years old. The abuse occurred regularly in her bedroom; her stepfather touched her over and under her clothes, on her buttocks, breasts, and genitals. The abuse included digital penetration and sexual intercourse, meaning

penetration of the vagina with the penis. The sexual assaults continued until the Monday before the victim disclosed. The victim stated her mother was unaware of the abuse.

{¶ 6} Sheriff's deputies told the victim's mother her daughter was being molested by her stepfather and the mother became physically ill. She told law enforcement she had no idea the abuse was taking place and never observed anything unusual about her husband's relationship with her daughter.

Appellant's Admissions

{¶ 7} Appellant is the victim's stepfather. He was first interviewed by the Morgan County Sheriff's Office on March 5, 2012 and waived his Miranda rights. In the first interview, deputies confronted appellant with the victim's allegations, including touching over and under the clothes and intercourse. Appellant stated he didn't want to accuse the victim of lying and admitted he intentionally touched the victim's breasts and genitals, but denied "sex." He stated he was trying to get "closer" with the victim as his stepchild because he is not her "blood father" and claimed there were only two incidents during which the contact occurred.

{¶ 8} Appellant was interviewed again on March 6, 2012 and waived his Miranda rights. Appellant was more forthcoming but claimed the victim initiated the sexual contact. He admitted placing his penis in the victim's vagina and that sexual contact occurred on multiple occasions, maybe "a dozen times." He also admitted the victim told him to stop and he was aware she wanted him to stop, but he held her down and prevented her from getting away. While acknowledging penetration occurred, appellant insisted it was not "sex" because he did not ejaculate, that being the "bridge [he] did not want to cross."

{¶ 9} After his arrest appellant wrote a number of incriminating letters from jail to his wife, the victim's mother. The letters state, e.g., appellant and the victim were "caught up in evil" but no "extreme lines" were crossed; the "truth might hurt and be hard to accept;" he did not realize what the victim was "put[ting] into place" until it was too late and he thought they were "bonding." He stated "[he] knew what took place was wrong but it was not intentional it just happened (sic )" and he didn't know the law.

Victim's Trial Testimony

{¶ 10} At trial the victim recounted incidents of abuse and approximate dates with the help of a scrapbook of her hunting achievements, dated by year and age. Appellant conditioned certain things the victim wanted, such as a new gun, a hunting trip, and a dog, on acts of abuse. Eventually the victim was old enough to try to get away from appellant but he held her down. Appellant asked her if she thought "it" was wrong and said without him her family would have nothing.

Appellant's Trial Testimony

{¶ 11} Appellant testified at trial and denied all sexual contact with the victim. He stated on one occasion he was in the victim's bedroom when she had an earache and she laid her head on his chest. He fell asleep and awoke to find the victim's hand in his shorts. He stated he did not place the victim's hand there. He denied making any threats to kill the victim's dog. He said he was only trying to cooperate during his interviews with law enforcement and in trying to protect his family he allowed deputies to put words in his mouth. On cross examination, appellant acknowledged he demonstrated his penis going "up and down" instead of "in and out" on videotape and acknowledged he wrote the letters his wife read in court.

{¶ 12} A number of charges were dismissed pursuant to a Crim.R. 29(A) motion at trial because the victim was unable to recall certain time periods in the indictment.

***

{¶ 13} The counts were indicted in groups of three offenses based upon the time period in which they occurred, each group consisting of one count each of gross sexual imposition, sexual battery, and rape. The trial court determined in each group, the offenses of G.S.I. and sexual battery merged into the rape offense, therefore in each group appellant was sentenced only upon the rape conviction (with the exception of Count 1, in which group the counts of sexual battery and rape were dismissed). Counts 1 through 15 charged offenses against a child under the age of 13; Counts 16 through 30 were premised upon force and/or the fact the offender was the stepparent of the victim. The sentences for Counts 1 and 29 were ordered to be served concurrently with Counts 6, 9, 15, 18, 21, and 27, which were ordered to be served consecutively.

{¶ 14} Appellant was found to be a Tier III sex offender.

{¶ 15} Appellant raises six assignments of error:

ASSIGNMENTS OF ERROR

{¶ 16} "I. THE TRIAL COURT ERRED BY ENTERING CONVICTIONS AND IMPOSING SENTENCES THAT ARE NOT SUPPORTED BY THE JURY'S VERDICT."

{¶ 17} "II. THE TRIAL COURT ERRED BY RUNNING SENTENCES CONSECUTIVELY IN THE ENTRY WITHOUT FIRST ORDERING THEM TO RUN CONSECUTIVELY AT THE SENTENCING HEARING."

{¶ 18} "III. THE TRIAL COURT ERRED BY RELYING ON IMPROPER SENTENCING FACTORS."

{¶ 19} "IV. THE TRIAL COURT ERRED BY DENYING MR. SHUSTER'S MOTION FOR NEW TRIAL."

{¶ 20} "V. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY PROFFERING A POTENTIAL EXPERT WITNESS WHO WAS NOT SUFFICIENTLY PREPARED TO PROVIDE AN ADMISSIBLE PROFESSIONAL OPINION."

{¶ 21} "VI. THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE THAT WOULD IMPEACH THE CREDIBILITY OF A WITNESS."

*State v. Shuster*, 5th Dist. No. 13AP0001, 13AP0002, 2014 WL 3936283, at *1–3 (Ohio Ct. App. Aug. 6, 2014).

On August 6, 2014, the appellate court affirmed the judgment of the trial court. *Id.* However, on October 9, 2014, the appellate court granted Petitioner's motion for reconsideration on the fourth assignment of error,[1] and reversed and vacated the trial court's decision on Petitioner's motion for a new trial to correctly indicate that it was void for lack of jurisdiction. Judgment Entry (Doc. 6, PAGEID #: 263–64). On March 11, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal and, on May 20, 2015, denied Petitioner's motion for reconsideration. *State v. Shuster*, No. 2014-1631, 141 Ohio St.3d 1489 (Ohio 2015); *State v. Shuster*, No. 2014-1631, 142 Ohio St.3d 1469 (Ohio 2015). On November 2, 2015, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari*. *Shuster v. Ohio*, 136 S.Ct. 404 (2015).

Petitioner re-filed his motion for a new trial upon completion of his direct appeal. The appellate court summarized those proceedings as follows:

{¶ 2} On June 5, 2013, appellant filed a motion for new trial, alleging juror misconduct. Attached to the motion was an unsworn statement of a juror, Richard Cooper. A hearing was held on July 5, 2013. By journal entry filed July 10, 2013,

---

[1] The appellate court stated: "Although all parties agree the issue raised in the assignment of error was properly decided (to wit, the trial court was without jurisdiction to rule on the motion for new trial), the assignment of error should have concluded the trial court's judgment was "reversed and vacated," instead of dismissed. Judgment Entry (Doc. 6, PAGEID #: 263–64).

the trial court denied the motion, finding it was divested of jurisdiction because the case was pending on appeal. In addition, the trial court determined an affidavit was not filed with the motion which was a fatal flaw under Crim.R. 33(C).

{¶ 3} Following the appellate decisions, appellant filed in the trial court a sworn affidavit of Richard Cooper on November 17, 2014, claiming it to be a substitute for the previously filed handwritten statement. On June 22, September 4, and October 5, 2015, appellant filed motions to amend and supplement his motion for new trial. By journal entry filed October 30, 2015, the trial court denied appellant's motion for new trial.

{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 5} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE APPELLANT'S MOTION FOR A NEW TRIAL."

II

{¶ 6} "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATEMENTS MADE BY THE JUROR VIOLATED EVIDENCE RULE 606."

III

{¶ 7} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO ATTACH AN AFFIDAVIT TO HIS MOTION FOR A NEW TRIAL."

*State v. Shuster,* No. 15AP0017, 2016 WL 3961964, at *1 (Ohio Ct. App. July 18, 2016). On July 18, 2016, the appellate court affirmed the judgment of the trial court. *Id.* On March 15, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Shuster*, No. 15AP0017, 148 Ohio St.3d 1426 (Ohio 2017).

On November 4, 2016, Petitioner filed a second motion for a new trial based on claims of prosecutorial misconduct and "abuse[s] of discretion appearing in the trial record." *State v. Shuster*, No. 16AP0012, 2017 WL 2258804, at *3 (Ohio Ct. App. May 11, 2017). On May 11, 2017, the appellate court affirmed the trial court's denial of that motion as barred under Ohio's

doctrine of *res judicata* and further held that Petitioner's claims were not properly addressed under Ohio's Criminal Rule 33. *Id.* Petitioner attempted to appeal, but the Ohio Supreme Court declined to accept jurisdiction. *State v. Shuster*, No. 2017-0868, 150 Ohio St.3d 1454 (Ohio 2017).

On December 11, 2017, through counsel, Petitioner filed a Motion for Leave to File Delayed Motion for New Trial Based on Newly Discovered Evidence in the state trial court, based upon a claim of juror misconduct. (Doc. 6-3, PAGEID #: 1655-56). On January 29, 2018, the trial court denied the motion as "fatally defective on its face" and for "no just cause for delay." Journal Entry (Doc. 6-3, PAGEID #: 1668). Petitioner filed a timely appeal (PAGEID #: 1669), which action apparently remains pending in the Ohio Court of Appeals.

On February 16, 2018, through counsel, Petitioner again filed a Motion for New Trial, this time asserting that the trial court had improperly admitted victim-impact evidence, and that he was denied a fair trial based on juror misconduct. (Doc. 6-3, PAGEID #: 1674, 1681, 1684). Apparently, that action also remains pending in the state trial court.

Petitioner has also pursued other state collateral relief. That litigation track proceeded as follows. On November 3, 2014, he filed an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 6, PAGEID #: 376). He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise the following claims on appeal:

1. Defendant-appellant was deprived of due process and equal protection of the law and the fair administration of justice in pre-trial proceedings based upon the ineffective assistance of counsel and judicial misconduct.

2. Defendant-appellant was deprived of due process, equal protection of the law and a fair trial due to (A) judicial misconduct of the trial court (1) failing to provide preliminary jury instructions to the impaneled jury to prepare them to hear the case, and (2) and for improperly, prejudicially, and wrongfully

commenting to the jury on the evidence to support the charges against defendant-appellant; (B) trial counsel was likewise ineffective for failing to request preliminary instructions and for failing to object to the trial court's comment on the evidence and failing to ask for a mistrial; and (C) prosecutorial misconduct for falsely and wrongfully communicating to the public prior to trial and the jury during trial that defendant-appellant had confessed to the charges in the indictment.

3. Defendant-appellant's convictions are contrary to law and against the manifest weight of the evidence and based on the lack or insufficiency of the evidence presented at trial.

4. The sentencing of Defendant-appellant is void ab initio because of an abuse of discretion in ordering multiple life sentences, existence of allied offenses and in ordering consecutive sentences.

(Doc. 6, PAGEID #: 512-13). On January 12, 2015, the appellate court denied the Rule 26(B) application. Judgment Entry (Doc. 6, PAGEID #: 511). On June 3, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PAGEID #: 559).

{¶ 9} In the meantime, on February 20, 2014, appellant filed a post-conviction ("PCR") petition in the trial court, pursuant to R.C. 2953.21. His claims essentially challenged the effectiveness of trial counsel regarding the use of a defense psychological expert and failure to obtain a medical expert and a more experienced defense investigator. Appellant supported these claims with affidavits from Attorney Lorin Zaner and Dr. Margaret Kay. In addition, affidavits in support of the claims were provided by appellant himself, appellant's father, appellant's grandmother, and investigator Daniel Zumbro. The State filed a response on February 25, 2014.

{¶ 10} On March 14, 2014, the trial court dismissed appellant's PCR petition, without a hearing.

{¶ 11} Appellant filed a notice of appeal on April 9, 2014. He herein raises the following sole Assignment of Error:

{¶ 12} "I. THE TRIAL COURT'S SUMMARY DISMISSAL OF MICHAEL SHANE SHUSTER'S PETITION FOR POST–CONVICTION RELIEF WITHOUT A HRARING (SIC) VIOLATED HIS RIGHT TO DUE PROCESS BECAUSE THE COURT DID SO WITHOUT MEANINGFULLY ADDRESSING THE EVIDENCE UPON WHICH THE PETITION WAS

BASED OR ANALYZING ITS IMPACT ON MR. SHUSTER'S CASE OVERALL."

*State v. Shuster,* No. 14 AP 0003, 2014 WL 4672419, at *2 (Ohio Ct. App. Sept. 11, 2014). On

September 11, 2014, the appellate court affirmed the trial court's judgment. *Id.* On March 25,

2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Shuster*, No.

2014-1718, 142 Ohio St.3d 1409 (Ohio 2015).

Petitioner also pursued state habeas relief. The state appellate court summarized those

proceedings as follows:

> {¶ 3} On May 26, 2015, appellant filed a writ of habeas corpus and alleged that he is being held "under an illegal conviction and sentence" and that his judgment of conviction and sentence is void. In particular, appellant asserted that he "was tried and convicted, through illegal tactics, procedures and abuses of processes." Appellant raised a litany of errors that he claimed occurred at trial, including ineffective assistance of counsel and prosecutorial misconduct. Appellant further claimed that appellate counsel on direct appeal provided ineffective assistance of counsel.

> {¶ 4} On June 22, 2015, appellee filed a Civ.R. 12(B)(6) motion to dismiss. Appellee alleged that appellant's maximum sentence has not expired and he is not, therefore, entitled to a writ of habeas corpus. Appellee further alleged that (1) appellant's claims are not cognizable in habeas corpus; (2) appellant had an adequate legal remedy by direct appeal and other means; (3) appellant raised or could have raised the claims on direct appeal, in a postconviction relief petition, or in an application to reopen; and (4) appellant did not comply with R.C. 2969.25(C) in that he failed to attach a certified statement from the institutional cashier setting forth the balance of his account.

> {¶ 5} On October 20, 2015, the trial court dismissed appellant's petition for a writ of habeas corpus. . . .

*Shuster v. Jenkins*, No. 15CA3516, 2016 WL 3569808, at *2 (Ohio Ct. App. June 20, 2016). On

June 20, 2016, the appellate court affirmed the judgment of the trial court. *Id.* On January 25,

2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Shuster v. Jenkins,*

No. 2016-1129, 147 Ohio St.3d 1506 (Ohio 2017).

Petitioner also has filed various miscellaneous motions that do not affect the resolution of this case. For example, on February 22, 2018, he filed a Verified Motion to Correct Sentence. (Doc. 6-3, PAGEID #: 1748). On October 20, 2016, he filed a motion for grand jury testimony. (PAGEID #: 1841). On March 2, 2018, the trial court denied that motion. (PAGEID #: 1862). Petitioner filed an appeal of that action, which apparently remains pending. (PAGEID #: 1913). On December 8, 2016, and January 23, 2017, he filed a Motion for Findings of Facts and Conclusions of Law. (PAGEID #: 1863, 1890).

On March 13, 2018, Petitioner filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of counsel because his attorney failed to attach a notarized statement from the witness providing the basis for his motion for a new trial (claim one); that he was denied the effective assistance of counsel because his attorney failed to present expert medical testimony to contradict the State's witness, nurse practitioner who bolstered the testimony of B.E. regarding findings from medical personnel from the physical, failed to investigate the psychological expert provided by Petitioner's family, failed to obtain services of an investigator to challenge the credibility of the alleged victim, and failed to supervise Mr. Zumbro, due to his lack of qualifications in the investigation (claim two); that he was denied a fair trial based on prosecutorial misconduct due to the prosecutor's reference to a non-existent confession during closing argument (claim three); and that he was denied due process when the trial court denied his motion for a new trial (claim four). It is the position of the Respondent that this action should be dismissed as barred by the one-year statute of limitations, and, alternatively, that Petitioner's claims are procedurally defaulted or without merit.

## II.  DISCUSSION

### A.  Statute of Limitations

As noted, Respondent argues that this action is time-barred.

#### 1.  Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d). The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id*.

#### 2.  Application

Petitioner's judgment of conviction became final under the provision of § 2244(d)(1)(A) on November 2, 2015, when the United States Supreme Court denied the petition for a writ of *certiorari.*  The statute of limitations began to run on the following day, and expired one year

later, on November 3, 2016, absent any tolling of the statute of limitations under § 2244(d)(2). However, Petitioner's motion for a new trial remained pending, and thus tolled the running of the statute of limitations under § 2244(d)(2), until March 15, 2017, when the Ohio Supreme Court declined to accept jurisdiction of the appeal. *See Pierce v. Warden, Ross County Corr. Inst.*, No. 3:10-cv-132, 2012 WL 551220, at *(S.D. Ohio Nov. 14, 2012) (noting that a properly filed motion for a new trial tolls the running of the statute of limitations under § 2244(d)(2) during the time period during which it remains pending). The statute of limitations began to run on the following day, and expired one year later, on March 16, 2018. Petitioner filed this habeas corpus petition on March 13, 2018. (Doc. 1). Thus, this action is timely.

### B. Procedural Default and Fair Presentment

#### 1. Standard

AEDPA provides that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find them barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub,* 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test described in *Maupin v. Smith*. 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.

*Maupin*, 785 F.2d at 138.  Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error.  *Id*.

### 2.  Application

#### i.  Claim One

In his first claim, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to attach a notarized statement from the witness providing the basis for his motion for a new trial.  It is the position of the Respondent that Petitioner waived this claim by failing to raise it on direct appeal, or in the Ohio Supreme Court.  *See* Return of Writ (Doc. 8, PAGEID #: 3123).  The record, however, indicates that the Ohio Court of Appeals addressed this claim on the merits.  *State v. Shuster*, 2016 WL 3961964, at *1, 3.  Further, Petitioner thereafter properly raised this same issue in a timely appeal to the Ohio Supreme Court.  *See* Memorandum in Support of Jurisdiction of Appellant, Michael Shane Shuster (Doc. 6-2, PAGEID #: 1219).  The Court will therefore consider the merits of claim one.

#### ii.  Claim Two

In his next claim, Petitioner asserts that he was denied the effective assistance of counsel because his attorney: failed to present expert medical testimony to contradict the State's witness, nurse practitioner; failed to investigate the psychological expert provided by Petitioner's family; failed to obtain services of a criminal investigator to investigate the claims and credibility of B.E. regarding her allegedly false accusations; and failed to properly supervise Mr. Zumbro.  Petition (Doc. 1, PAGEID #: 17-18).  Respondent again asserts that Petitioner waived this claim by

failing to raise it on direct appeal, or in the Ohio Supreme Court. Return of Writ (Doc. 8, PAGEID #: 3136). Again, however, the record says otherwise. Petitioner presented his off-the-record claims of the denial of the effective assistance of trial counsel in a petition for post-conviction relief, and the state appellate court addressed these issues on the merits. *State v. Shuster*, 2014 WL 4672419. Petitioner raised the same claim in a timely appeal to the Ohio Supreme Court. Memorandum in Support of Jurisdiction of Appellant Michael Shane Shuster (Doc. 6-1, PAGEID #: 718). The Court will therefore consider the merits of claim two.

### iii.    Claim Three

In claim three, Petitioner asserts that he was denied a fair trial due to prosecutorial misconduct, based on the prosecutor's reference to a "non-existent confession" in closing argument. Petition (Doc. 1, PAGEID #: 23). It is the position of the Respondent that Petitioner waived this claim by failing to raise it on direct appeal. This Court agrees.

Petitioner's claim of prosecutorial misconduct is readily apparent from the face of the record and therefore should have been raised on direct appeal but was not. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (citing *Hill v. Mitchell*, No. 1:98-CV-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006) (citing *State v. Perry*, 10 Ohio St.2d 175 (1967)). Thus, Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise those claims on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied. Moreover, Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims. *See, e.g., State v. Cole*, 2 Ohio St.3d 112 (1982). In addition, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an

independent and adequate ground for denying federal habeas relief. *See, e.g.*, *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). With respect to *Maupin*'s independence prong, the Court concludes that in this context, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. Accordingly, after a review of the relevant case law, the Undersigned concludes that the first three *Maupin* factors are satisfied.

Petitioner contends that he preserved claim three for review in these proceedings by raising it in his motion for a new trial. Petition (Doc. 1, PAGEID #: 23–24).[2] The record does not support this argument. In his first motion for a new trial, Petitioner did not raise a claim of prosecutorial misconduct, but asserted that he had been denied a fair trial based on juror misconduct. (See Doc. 6-1, PAGEID #: 747). He later amended his motion to allege that the jury had improperly considered "outside influences in the form of pre-trial publicity and prosecutorial misstatements that [he] had confessed[.]" (PAGEID #: 889-90). He claimed that "information regarding the confession was made by the Morgan County Prosecutor. . . and the Morgan County Sheriff's Office approximately [o]ne (1) year prior to [t]rial[.]" (PAGEID #: 1045). Petitioner did not, however, raise a claim of prosecutorial misconduct based on the prosecutor's improper reference to a non-existent confession during closing arguments, as he does now. Likewise, he did not raise a claim of prosecutorial misconduct in the Ohio Court of Appeals. (*See* Doc. 6-2, PAGEID #: 1168). Petitioner argued in the first instance on appeal to the Ohio Supreme Court, that "[a] prosecutor cannot taint the jury with his misstatements of fact

---

[2] Petitioner states that he learned after trial that certain jurors, including Maria Waite, Jerry Reeder, and Mr. Benjamin indicated that their guilty verdict was influenced by comments they heard outside of court regarding his "so-called confession" to the crimes charged. Petition (Doc. 1, PAGEID #: 24-25). Petitioner also refers to the Affidavit of Jane Zumbro. (PAGEID #: 26).

and then claim the allunde [sic] rule when the same misstatements become a key issue in deliberation." Memorandum in Support of Jurisdiction of Appellant, Michael Shane Shuster (Doc. 6-2, PAGEID #: 1227).[3] But Petitioner did not thereby preserve this issue for review in these proceedings. *See Mills v. Hudson*, No. 3:08-cv-1974, 2009 WL 2232858, at *7 (N.D. Ohio July 22, 2009) ("Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.") (citing *Ohio v. Jester*, 32 Ohio St.3d 147 (1987)). Indeed, "[w]here the state courts are silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court 'would not have ignored its own procedural rules and would have enforced the procedural bar.'" *Nichols v. Bradshaw*, No. 1:10-cv-2793, 2011 WL 9160409, at *14 (N.D. Ohio Oct. 24, 2011) (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)). The Sixth Circuit has held that Ohio's rules requiring appellants to raise claims timely in the appellate court before they can be considered by the Ohio Supreme Court advance the state's interest in the regularity of criminal convictions, do not implicate federal law, and constitute an adequate and independent ground on which to foreclose federal habeas corpus review. *Id.* (citing *Normand v. McAninch*, No. 98-3747, 2000 WL 377348, *5 (6th Cir. April 6, 2000)). Petitioner also later attempted to raise a claim of prosecutorial misconduct in his motion for a new trial, but the appellate court expressly refused to address the merits of this claim as barred under Ohio's doctrine of *res judicata* because he could have raised the issue on direct appeal. *See State v. Shuster*, 2017 WL 2258804, at *3.

---

[3] Petitioner argued that the "jurors were fed misinformation by the prosecution before the trial by telling the media that [he] had confessed. They continued this attack on [Petitioner] in the closing argument when, without objection, they stated he confessed to the crimes. . . . [This outside information pressured the jury into making a bad decision. . . . The prosecutor knew [Petitioner] had not confessed but said it anyway." (Doc. 6-2, PAGEID #: 1227-28).

Thus, in short, Petitioner has procedurally defaulted claim three. He may nevertheless secure review of this claim on the merits if he demonstrates cause for his failure to follow state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner does not allege a cause for failing to raise his claim on direct appeal, and the record fails to reflect that he can establish cause and prejudice for this procedural default.

The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (citing *Murray v. Carrier,* 477 U.S. at 492). The ineffective assistance of counsel claim, however, must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). Before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth

Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, a petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court has explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

Here, Petitioner has procedurally defaulted his claim of the denial of the effective assistance of appellate counsel, and it therefore cannot constitute cause for his procedural default of claim three. Although Petitioner briefly mentioned appellate counsel's failure to raise an issue regarding prosecutorial misconduct in the Ohio Court of Appeals, the appellate court did not address the issue. *See* Appellant's Application for Reopening Appeal Pursuant to Rule 26(B) of

the Rules of Appellate Procedure (Doc. 6, PAGEID #: 373-82); Judgment Entry (PAGEID #: 511). Moreover, he did not raise this claim in the Ohio Supreme Court; Memorandum in Support of Jurisdiction of Appellant Michael Shane Shuster [Pro Se] (Doc. 6, PAGEID #: 527-28). Moreover, Petitioner has failed to establish cause for this procedural default.

The record likewise does not reflect that Petitioner can establish that he is actually innocent or the victim of a fundamental miscarriage of justice, such that his procedurally defaulted claim nonetheless may be considered on the merits. *See Souter v. Jones,* 395 F.3d 577, 589-90 (6th Cir. 2005) (In order to establish his actual innocence, the Petitioner must show that it is "more likely than not" that new evidence not presented at trial would allow no reasonable juror to find him guilty beyond a reasonable doubt) (footnote omitted). Petitioner cannot meet this high standard here. Consequently, the undersigned concludes that Petitioner has waived claim three for review in these proceedings.

### iv. Claim Four

In claim four, Petitioner asserts that he was denied due process and the Sixth Amendment right to a fair trial because the trial court denied his motion for a new trial. Specifically, he asserts that multiple jurors insinuated that they believed, wrongly, that he had confessed to the crime, and that they were therefore biased against him. He complains that the state appellate court failed to address this claim and thus seeks a *de novo* review. Petition (Doc. 1, PAGEID #: 31).

The record does not indicate, however, that Petitioner presented this same federal issue to the state courts. In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S.

270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

Here, Petitioner asserted in the state appellate court that the trial court had "abused its discretion" by overruling his motion for a new trial due to the non-inclusion of an Affidavit. (Doc. 6-2, PAGEID #: 1176). He referred to state law and Ohio's criminal rules in support of this claim. He did not, however, refer to the denial of his right to a fair trial, the Sixth Amendment, or to any federal cases or state cases relying on federal law in support of his argument that the trial court had abused its discretion. Moreover, Petitioner has failed to establish cause for this failure. He therefore has waived any federal issue for review in these proceedings by failing to present it fairly to the state courts.

Moreover, the record does not reflect that this claim warrants relief. Indeed, to the extent that Petitioner argues that the trial court abused its discretion when it denied his motion for a new trial, this claim raises an issue regarding the alleged violation of state law and does not provide

him relief. *See Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). "To establish a constitutional due process claim, [Petitioner] must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial." *Id.* (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)); *see also Rodriguez v. Warden, Southern Ohio Corr. Facility*, 940 F. Supp.2d 704, 711 (S.D. Ohio March 15, 2013) (same). Such are not the circumstances here. Notably, the Sixth Circuit has held that "there is no 'constitutional impediment to enforcing' Ohio's aliunde rule[.]" *Hoffer v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) (citations omitted). Further, Petitioner cites no Supreme Court precedent holding that application of the *aliunde* rule is unconstitutional, and the Supreme Court has upheld application of Rule 606(b) of the Federal Rules of Evidence to prohibit use of a juror's testimony that another juror lied during *voir dire. See Gatliff v. Tibbals*, No. 1:14-cv-931, 2015 WL 8481565, at *16 (S.D. Ohio Dec. 10, 2015) (denying claim of the denial of due process based on state court's application of the *aliunde* rule in motion for new trial based on alleged juror misconduct due to no Supreme Court precedent holding that the application of the *aliunde* rule in these circumstances is unconstitutional) (citing *Warger v. Shauers*, -- U.S. --, 135 S.Ct. 521 (2014)).

### C. Merits

#### 1. Standard

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that

a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011) ); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)).  The United States Court of Appeals for the Sixth Circuit has summarized these high standards:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748–49. Ultimately, the burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## 2. Application

In all criminal prosecutions, the Sixth Amendment affords "the accused ... the right ... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, the Supreme Court observed that while "'[s]urmounting Strickland's high bar is never ... easy[,]' ... [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is even more difficult[.]" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland*, 466 U.S. at 689). The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether

counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### i. *Claim One*

In his first claim, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to attach a notarized statement from the witness providing the basis for his motion for a new trial, resulting in the denial of that motion. Petitioner contends that this Court should conduct a *de novo* review of this claim, because the state courts failed to address this issue. Petition (Doc. 1, PAGEID #: 17). The record, however, indicates that the state appellate court rejected this claim on the merits:

> Appellant [] claims the trial court erred in finding the statements of juror Richard Cooper violated Evid.R. 606. We disagree.
>
> {¶ 9} Whether to grant or deny a motion for new trial pursuant to Crim.R. 33 is within a trial court's sound discretion. *State v. Schiebel*, 55 Ohio St.3d 71 (1990). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).
>
> {¶ 10} Crim.R. 33 governs new trial. Subsection (A)(2) states: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: Misconduct of the jury, prosecuting attorney, or the witnesses for the state." Pursuant to subsection (C), "[t]he causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit."
>
> ¶ 11} Pursuant to Crim.R. 33(B), appellant filed a motion for new trial within one hundred and twenty days of his conviction. The motion filed on June 5, 2013, alleged juror misconduct, and included an unsworn handwritten statement by juror Richard Cooper. A hearing was held on July 5, 2013. By journal entry filed July 10, 2013, the trial court denied the motion, finding it was divested of jurisdiction because the case was pending on appeal. In addition, the trial court determined an affidavit was not filed with the motion which was a fatal flaw under Crim.R. 33(C).
>
> ¶ 12} On November 17, 2014, appellant filed a sworn affidavit of Richard Cooper. Accompanying the affidavit was a letter from appellant, directing the Clerk of Courts to file the affidavit and attach it to the June 5, 2013 motion for

new trial. Appellant indicated the "Affidavit is to substitute for the handwritten statement of Richard Cooper previously filed with and attached to the Motion for a New Trial." The sworn affidavit averred the following:

> I, the undersigned, RICHARD COOPER, hereinafter referred to as "AFFIANT", being first duly sworn according to law, depose and state the following based upon personal knowledge and/or information:

> 1. That I am a resident of Morgan County, Ohio.

> 2. That I am an adult and this Affidavit is the result of an act of my own free will and accord.

> 3. That I was selected and sworn as a juror and I served on the jury, in the trial of the case State of Ohio v. Michael Shane Shuster, that ultimately convicted him on April 4, 2013 for certain offenses for which he was charged.

> 4. That we jurors had heard, prior to trial and since the time of the arrest of Michael Shane Shuster, that he had confessed to the charges filed against him and for those charges which were the subject of the trial.

> 5. That the Prosecuting Attorney, during his closing argument, told the jury that Michael Shane Shuster had confessed to the charges.

> 6. That we thought our deliberations were just a formality since we were told that Michael Shane Shuster had confessed.

> 7. That we didn't examine any evidence during our deliberations and although we asked to see the transcripts of witnesses' testimony we were told by the Court that we could not do so because they were not transcribed.

> 8. That the entire period of time of our deliberations was used to fill out verdict forms for the many charges.

{¶ 13} Thereafter, on June 22, September 4, and October 5, 2015, appellant filed motions to amend and supplement his motion for new trial. By journal entry filed October 30, 2015, the trial court denied the motions, finding the following:

This matter is before the Court upon motion of Defendant for a new trial and supplements there to, and upon motion contra of the State.

After consideration of all pleadings and documentation, for reasons set forth in the State's motion contra, it is apparent that Defendant's motion is fatally defective on its face, and Defendant is not entitled to the relief requested.

¶ 14} The state's motion contra filed on October 20, 2015, relied on the language of Evid.R. 606(B). Despite the various arguments relative to the presence of an affidavit or lack thereof, we find Evid.R. 606(B) to be controlling:

> (B) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

{¶ 15} As the Supreme Court of Ohio stated in *Schiebel,* 55 Ohio St.3d at 75–76:

> In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, *Wicker v. Cleveland* (1948), 150 Ohio St. 434, 38 O.O. 299, 83 N.E.2d 56, and the information must be from a source which possesses firsthand knowledge of the improper conduct. One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first. *See Diehl v. Wilmot Castle Co.* (1971), 26 Ohio St.2d 249, 55 O.O.2d 484, 271 N.E.2d 261; *Lund v. Kline* (1938), 133 Ohio St. 317, 10 O.O. 411, 13 N.E.2d 575; *Kent v. State* (1884), 42 Ohio St. 426, paragraph four of the syllabus. Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence aliunde. *See Tasin v. SIFCO Industries, Inc*. (1990), 50 Ohio St.3d

102, 553 N .E.2d 257; *Dodd v. McCammon* (1920), 14 Ohio App. 160, 32 Ohio C.C .(N.S.) 68.

{¶ 16} As a juror in the case, Mr. Cooper cannot now impeach his own verdict with his own statement alone. Evid.R. 606 has been consistently upheld as the law relative to the impeachment of jury verdicts. "The rule is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." *Schiebel, supra*, at 75. *See also State v. Adams*, 141 Ohio St. 423 (1943).

{¶ 19} Appellant claims his trial counsel was ineffective in not filing a proper affidavit of Richard Cooper. We disagree.

{¶ 20} The standard this issue must be measured against is set out in *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

> 3.To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 21} The original June 5, 2013 motion for new trial included an unsworn handwritten statement purporting to be Richard Cooper. On November 17, 2014, appellant, pro se, filed the sworn affidavit of Richard Cooper, along with a letter directing the Clerk of Courts to attach it to his June 5, 2013 motion for new trial. We can only assume that explains why the sworn affidavit is filed out of order in the record. However, we find the affidavit to be a non sequitur to the issue presented, jury impeachment by a fellow juror. Despite any deficiencies argued, the presence of a Cooper affidavit or the lack thereof does not affect the outcome of the ruling under Evid.R. 606.

*State v. Shuster*, 2016 WL 3961964, at *1-4.

Thus, this Court conducts the "doubly deferential" standard of review under the AEDPA,

giving both the state court and defense counsel the "benefit of the doubt" and affording "due

respect" to the state courts "by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, -- U.S. --, --, 135 S.Ct. 1372, 1376 (2015). Clearly, such are not the circumstances here. Petitioner cannot establish the denial of the effective assistance of counsel based on any error in the submission of Cooper's affidavit in support of the motion for a new trial, as he cannot establish prejudice under *Strickland* from any defect in submission of Cooper's affidavit. This is because Ohio law prohibited Cooper from impeaching his own verdict, and the affidavit therefore could not assist him. Petitioner has failed to establish that the state appellate court contravened or unreasonably applied federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254(d), so as to warrant federal habeas corpus relief. In sum, claim one is without merit.

### ii.    *Claim Two*

In his next claim, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to present expert medical testimony to contradict the State's witness who bolstered the testimony of B.E. regarding the findings from medical personnel about her physical examination; failed to investigate the psychological expert provided by Petitioner's family for assistance with cognitive abilities that would implicate processing of questions during interrogation, the presence of false allegations, and delayed reporting and memory issues; failed to obtain the services of an experienced criminal investigator to investigate claims and the credibility of B.E. and false accusations; and failed to supervise and direct Mr. Zumbro properly. The state appellate court rejected this claim as follows:

> {¶ 15} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a

claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; *i.e*., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id*.

{¶ 16} A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Wilhelm, Knox* App.No. 05–CA–31, 2006–Ohio–2450, ¶ 10, citing *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819. However, "'* * * when the trial court record does not contain sufficient evidence regarding the issue of competency of counsel, an evidentiary hearing is required to determine the allegation. * * * '" *State v. Radel*, Stark App.No.2009–CA–00021, 2009–Ohio–3543, ¶ 17, quoting *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (citation omitted).

{¶ 17} The Ohio Supreme Court has recognized: "In post-conviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor*, 112 Ohio St.3d 377, 388, 860 N.E.2d 77, 2006–Ohio–6679, ¶ 51. As an appellate court reviewing a trial court's decision in regard to the "gatekeeping" function in this context, we apply an abuse-of-discretion standard. *See id*. at ¶ 52, citing *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905. *Accord State v. Scott*, Stark App.No.2006CA00090, 2006–Ohio–4694, ¶ 34. To make the determination as to holding a hearing, the court must consider the petition, supporting affidavits, and files and records, including, but not limited to, the indictment, journal entries, clerk's records, and transcript of the proceedings. See R.C. 2953.21(C).

Appellant's Claims of Ineffective Assistance of Trial Counsel

{¶ 18} Appellant herein focuses on three areas of alleged ineffective assistance. He first maintains that trial counsel failed to present expert medical testimony to challenge one of the State's witnesses, a nurse practitioner, who testified as to the "normal" results obtained via the physical examination of the victim. Appellant urges that expert testimony could have been utilized to clarify or challenge the nurse's testimony as to how often "normal" findings are obtained in cases of sexual abuse. See Tr. at 293; Zaner Affidavit at ¶ 23. However, appellant does not articulate what such an expert would have actually concluded, such as the statistical likelihood that normal findings would exist even where genital penetration of a minor female had repeatedly occurred. The impact of expert testimony in this regard is thus largely speculative in this instance. We have recognized that " * * * complaints of uncalled witnesses are not favored, because

the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *State v. Phillips,* Stark App.No.2010CA00338, 2011–Ohio–6569, ¶ 26, quoting *Buckelew v. United States* (5th Cir.1978), 575 F.2d 515, 521 (internal quotations marks omitted).

{¶ 19} Appellant next contends trial counsel failed to investigate and utilize a psychological expert, Dr. Margaret Kay, who had been contacted before trial by appellant's family, in order to allow consideration of appellant's cognitive abilities that might impact the processing of questions during interrogation, as well as issues of false allegations, delayed reporting and memory capabilities on the part of the victim. Appellant argues that Dr. Kay, had she been engaged by trial counsel, " * * * would have administered numerous tests to Mr. Shuster, including but not limited to, clinical personality tests, intelligence tests, neuropsychological assessments, behavior assessments and a mental status examination." Appellant's Brief at 11, citing Kay Affidavit at ¶ 20, emphasis added. Again, however, we are left to speculate as to what scientific results would have been obtained from such tests, and what exculpatory value they would have had to the defense. It has been aptly stated that "[p]etitions for postconviction relief are available to defendants to rectify errors in prior proceedings and to effectuate justice. They are not available to be used as fishing expeditions." *State v. Yarbrough*, Shelby App.No. 17–2000–10, 2001–Ohio–2351, citing *State v. Durr* (Aug. 25, 1994), Cuyahoga App. No. 65958.

{¶ 20} Appellant thirdly maintains that trial counsel failed to either properly supervise and direct Daniel Zumbro, the volunteer defense investigator at trial, or to obtain the services of a more experienced criminal investigator to investigate the claims and credibility of the victim. The trial transcript indicates that Zumbro's main focus was on the layout of the house and the likelihood of sound carrying between the bedrooms. See Tr. at 559–577. Appellant essentially argues that since much of the State's case hinged on the victim's recollections of appellant's acts, much more effort should have been made to impeach the victim by investigating her alleged motives for accusation. However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. We find in this instance that trial counsel may have, based on a reasonable trial strategy, sought to avoid overemphasizing credibility issues before the jury with a repeatedly abused child victim taking the stand.

{¶ 21} Notwithstanding our concerns with the speculative nature of appellant's above arguments, we must further balance such claims with the evidence in the trial record. See R.C. 2953.21(C), supra. As we summarized in appellant's direct appeal, in addition to the victim's testimony before the jury, evidence was adduced that appellant was first interviewed by the Morgan County Sheriff's Office on March 5, 2012 and waived his Miranda rights. In the first interview, appellant admitted he intentionally touched the victim's breasts and genitals, but

denied having sex. He stated he was trying to get "closer" with the victim as his stepchild because he is not her biological father, and he claimed there were only two incidents during which the contact occurred. In his second interview on March 6, 2012, he admitted placing his penis in the victim's vagina and that sexual contact occurred on multiple occasions, maybe "a dozen times." He also admitted he had held the victim down and prevented her from getting away. While acknowledging penetration occurred, appellant insisted it was not "sex" because he did not ejaculate. Moreover, after his arrest, appellant wrote a number of incriminating letters from jail to his wife, the victim's mother. The letters stated, for example, that appellant and the victim were "caught up in evil," but no "extreme lines" were crossed. He also wrote that he did not realize what the victim was "put[ting] into place" until it was too late. He also therein stated that he "[knew] what took place was wrong, but it was not intentional," and that he didn't know the law.

Conclusion

{¶ 22} In addressing PCR claims, we remain mindful that "[a] defendant is entitled to a fair trial but not a perfect one." *See State v. Bleigh*, Delaware App.No. 09–CAA–03–0031, 2010–Ohio–1182, ¶ 133, quoting *Bruton v. United Stat*es (1968), 391 U.S. 123, 135–136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (internal quotations omitted). In the case sub judice, that after reviewing the documentary evidence presented by appellant in his petition, the trial court concluded that "[c]onsidering the totality of the circumstances, which includes the three stated alleged deficiencies, there would be no different result." Judgment Entry at 6. We are unable to conclude the trial court's conclusions in this regard were unreasonable, arbitrary, or unconscionable. Upon review of the record and judgment entry in the case sub judice, we hold the trial court did not abuse its discretion in denying appellant's petition for post-conviction relief, and we are unpersuaded that the trial court abused its discretion in declining to allow a post-conviction evidentiary hearing in this matter.

{¶ 23} Appellant's sole Assignment of Error is therefore overruled.

*State v. Shuster*, 2014 WL 4672419, at *3–5.

In support of this claim, Petitioner refers to the Affidavit of Attorney Lorin J. Zaner, indicating that she is experienced in obtaining acquittals in sexual assault cases, and that it is her opinion that Petitioner's attorney should have called a psychological expert to impeach the credibility of the alleged victim, as well as a medical expert to explain to the jury that the "normal findings" of the nurse practitioner who examined the alleged victim did not reflect

evidence of sexual assault, and that he should have retained the services of a qualified criminal investigator to conduct interviews and determine whether there existed an alternative explanation for the allegations of sexual assault. (Doc. 6-1, PAGEID #: 617-18). Petitioner also refers to the Affidavit of Margaret J. Kay, a psychologist, indicating that she reviewed the videotapes of Petitioner's interviews with police and B.E.'s interview with the Child Advocacy Center, and that a psychological expert could have evaluated these interviews and conducted an assessment of the Petitioner to assist the defense. (PAGEID #: 621-22). He refers to the Affidavit of Daniel Zumbro, indicating that he volunteered to assist the Petitioner investigate the case, but he had no experience in conducting criminal investigations, defense counsel offered him no guidance, and he was unable to assist the defense. (PAGEID #: 647). Petitioner additionally refers to his own affidavit, and that of his father, Charles Schuster, and grandmother, Mary Lea Schuster. (PAGEID #: 642–46).

Again, applying the "doubly deferential" standard of review that this Court is required to do, *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017) (citing *Van Tran v. Colson*, 764 F.3d 594 (6th Cir. 2014) ("[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.") (citing *Harrington v. Richter*, 562 U.S. 86 (2011)), Petitioner has failed to establish that relief is warranted. Nothing in the record supports his allegation that the testimony of a of a psychological or medical expert, or the use of a qualified criminal investigator would have assisted the defense.[4] Thus, the state

---

[4] Petitioner complains that the investigator had him write letters to his ex-wife and mother of the prosecuting witness, which contained admissions that were used against him at trial. Reply (Doc. 15, PAGEID #: 3179-80). However, Petitioner did not raise this same claim in the initial Petition or in post-conviction proceedings. (See Doc. 6-1, PAGEID #: 605-09). Because he did not present this claim to the state courts, he has waived it for review in these proceedings.

appellate court did not contravene or unreasonably apply *Strickland* in rejecting this claim under the provision of 28 U.S.C. § 2254(d) (1), (2), and claim two is without merit.

## III. DISCOVERY AND EVIDENTIARY HEARING

In his prayer for relief, Petitioner requests to conduct discovery and an evidentiary hearing. The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions. *See Harris v. Nelson*, 394 U.S. 286, 295 (1969) (holding that the "broad discovery provisions" of the Federal Rules of Civil Procedure do not apply in habeas corpus proceedings). Instead, under Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure[.]" Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 300); *see also Williams v. Bagley*, 380 F.3d 932, 974-75 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Thus, a habeas petitioner cannot use the discovery process as "fishing expedition" in search of damaging evidence. Instead, a petitioner must at least attempt to identify what he expects to uncover through his discovery requests. *See Williams v. Bagley*, 380 F.3d at 976; Rule 6(b), Rules Governing Section 2254 Cases in the United States District Courts ("A party requesting discovery must provide reasons for the request.).

Here, Petitioner has failed to satisfy the standard. He neither identifies the nature of the material he seeks nor indicates the manner in which it will assist him in establishing his claims. Accordingly, Petitioner's request for discovery and an evidentiary hearing are **DENIED.**

## IV.    RECOMMENDED DISPOSITION

For all of the foregoing reasons, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.  In addition, Petitioner's request for discovery and an evidentiary hearing is **DENIED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date:  November 2, 2018                    /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE